17-3692 USA v. Alejandro Cota-Luna and Antonio Navarro Gaytan Arguments not to exceed 10 minutes for each defendant, 20 minutes for the plaintiff, Mr. My name is Jamie Surratt, and I'm here on behalf of Alejandro Cota-Luna, the appellant. I ask that it be allowed to reserve three minutes for rebuttal. First argument I would like to present is regarding the 11-C agreement, because I think that set the tone for what transpired throughout the entire proceedings. And I think what's important to understand is how hard the parties worked to get to that point. Both the government and both co-defendants tried real hard to get to that point. It was highly contested. It was going to be litigated. And we were on a time crunch. It was during the holidays. We worked real hard during the holidays. And I want to make sure that the court understands all the parties involved in trying to resolve this. It wasn't just us attorneys. It was agents that were involved in the investigation. Everybody that had something to do with this case was present during our meetings. Is a district judge required to accept an 11-C1C? No, Your Honor, they're not. They're not. And I'm conceding that. However, I think if the court abuses its discretion in denying it, it's something that this court can now go back and review. So if we were to decide that the district judge abused his discretion in denying the 11-C1C, could we order that the 11-C1C be implemented? That's what I'm asking this court to do. There's no caseload to that effect. There's no caseload either way. Is that right? Correct. That is correct, Your Honor. But I've been in this for many years. I'm familiar with the Northern District of Ohio. I've never had one rejected before. It's not very popular in Northern District of Ohio, but most judges do accept it. And the few occasions that it's been sort of put on hold, a conditional, is because the court wants to find out more about the 33-53 factors. They do the pre-sentence investigation report, and then court reviews it, primarily to do that, to see what factors are involved in this case and see if this is something that I can live with. But in this case, what happened, I think the court had its own agenda from day one. I think the court of record stated that nobody with this type of charge should be entitled to a minimum rule or safety valve, not knowing anything about the case. And I think that the score, the judge did whatever he had to do to get to what he wanted to do. He based it on the number of kilos of drugs. Correct. And once the indictment came down, I think the fate was done. The court felt that he was going to do whatever he could to get to that point. So I'm going through 11C because at no point in time did he, under record, state why he didn't accept it. He gave two reasons, the large amount of the drugs, which was already taken into account by the guidelines calculation. And the other reason he gave was other relevant conduct. But he never said what that other conduct was. Correct. And it's interesting because we hadn't had a hearing at that point. This was just my humble opinion, just based on the indictment. Nothing had been presented to the court for the court to make that decision. And strangely enough, we had a sidebar conversation. I was not privy to the record. But that's why, after that, I specifically asked him, Judge, do we have a problem the way we calculated the guidelines and the plea agreement? Because I want to get some basis why he rejected the agreement. And he said no, he didn't have a problem the way we calculated the guidelines. Did he have the PSR already at this point? No, Your Honor, he did not. The case was set for a motion to suppress hearing, allegedly. So both sides were under the gun in trying to decide whether we're going to allegate it or not. Newly discovered evidence came at the very last minute by way of the government, and that's when we came to the conclusion. Both sides felt that this was a fair and accurate representation of what the involvement of what our clients had done. And I want to keep in mind that the agents were involved in this negotiations. It wasn't just the government. It was the agents. It was the supervisor. It was the supervisor in charge of the drug unit. It was Mr. Brown. We were all there. The judge had not privy to those conversations. The judge did not know what the investigation had concluded. But to me, that's why I asked him that specific question. Judge, here's the plea agreement, the way the guidelines were calculated, and it got to the level 20 with the safety valve, the minimum rule, things of that nature. He looked at me in the face and said, no, I don't have a problem that's being calculated. At that point, we made a strategic decision. Well, if he doesn't have a problem, the only thing left is a variance. In our mind, that's the only thing that was left to do for the court. If he wanted to punish the client more, that's what we pled the case. I just wondered when I read the record, and I might have had some things out of sequence, but I wondered if the district judge had already come to the conclusion that the defendants did not qualify for safety valve relief. Somehow came to that conclusion, which made him think that even though the range was properly calculated, the sentence was inappropriate in his view, and that was sort of the unstated reason. I don't know the answer to that question. I'm kind of trying to piece it together, obviously, because it wasn't expressly stated. I think in his mind, he wanted to punish our clients a certain amount of years, and he had to find a tool to get to that point. It's hard for me to believe that he had made up his mind that they did not qualify for the safety valve because he didn't know anything about the case. He clearly, as far as the prongs that he argued, clearly he had not conversed with the agent. He had not conversed with the U.S. Attorney's Office to decide whether they had qualified for the five prongs or not. We had, and that's why I felt comfortable that we were going to meet that requirement as well as they had. As you know, all of them, all of the safety valve arguments that were presented before the court typically is the government or the defendant because the government wasn't satisfied with the colloquy that they gave, things of that nature. I've never had a case where the court, having the government presented arguments to the court by not only Mr. Brown,  yeah, this guy's qualified because there were minimal rules in this investigation, in this conspiracy, and obviously he felt that that was not sufficient. And for the life of me, I don't know. Again, it was an agenda, and he had to do whatever he could to get to that agenda. Is there a case that says that a district judge has to explain why he's rejecting an 11C1C? It's just plain argument, Judge. If I'm going to deny something, I mean, no, there's no case law to that, Judge. Because typically they're accepted or they're denied. I think if you look at the 11C case law, they're taken under consideration, and they're denied later on based on facts that the court will explain on a record why they did that. For instance, cases where, once again, I'm repeating myself, the 3553 arguments. In this case, I'm not able to accept this 11C because your client has a long history of prior records, has been involved in numerous things. I'm not going to do that in this case. In this case, it was the complete opposite. Had he done that, he may or may not have known. He would have known that the 3553 factors that pertain to my client, they're all heavily, heavily to his favor, the no record and things of that nature. Wasn't there information in the PSR to the effect that your clients were not leaders, organizers of this criminal enterprise? With all due respect, it was stronger than that. That was noted by the agent, Agent Moses. He noted that notation to the court. He made that notation to the court. It was noted by Agent Brown and the probation officer as well, after speaking with my client in preparation of the report, made the same findings. So all the parties involved except Judge Adams. So that should not have been a basis for the judge denying safety valve law? There was absolutely no facts before the court that the court could have come to that conclusion, none. Okay. So then he was creative enough to try to argue the timeliness, that we didn't do the proffer in time. There's no case law to that. As long as it's done before sentencing, we're okay. And my client did not. Oh, I think the judge said that the proffer should have been in person rather than being communicated through the attorneys. And I couldn't find any case law as to that. And I was wondering if you knew of any cases that had anything to say about that one way or the other. Well, there is no case law because it doesn't exist. Because what if you're mute? What if you don't speak the language? You need an interpreter. Pretty much that's what happened here. I'm very familiar with the parties involved. I've translated numerous times for the government and proffers. And what I want you to understand here, this investigation was minimal. It involved a few hours. And whatever my clients had to offer by way of proffer was corroborated by physical evidence. And the government had all that evidence, and my client explained to them, through me initially and then himself, that corroborated what the government thought. And so there was no dispute. At no point in time did the government say to me, hold on, Jamie, your client said A, but it could have been A because they had to be B. No, they were very satisfied with this colloquy initially. Thank you. May it please the Court, my name is Terry Gilbert. I represent Antonio and Navarro-Gaetan. I'm going to reserve two minutes. I don't want to repeat what Mr. Surratt said because I think he laid out the problem with the 11C agreement. I just want to point out that on January 4th, after we had worked with the supervisors of the U.S. Attorney's Office, the head of the drug unit there, and the agent who accepted the representations that were provided regarding the safety valve, we went into Judge Adams' courtroom and, of course, he just rejected the 11C, as Mr. Surratt said. After he had denied my request for an expert on the question of speed, because there was a motion to suppress and gave no reason for that, other than you already have another expert on Spanish language interpretation. But I think that this judge had an ax to grind about this case from day one. And it just went downhill from that point on. And I want to talk a little bit more about what happened afterwards. After the pre-sentence process and the report was issued, had a sentencing memorandum, we go to the first sentencing hearing on May 18th, in which he proclaimed that he doesn't think that the safety valve was made, was acceptable because of the lack of an in-person meeting with the government. And is there any case that says one way or the other that there must be? We did cite a case out of the 1st District in our brief. I think it's called Miranda-Santiago. Submissions by counsel are okay, even to the probation department. And if it's not objected by the government and accepted by the probation department, it was deemed appropriate. We have plenty of cases that say the attorney is the agent of the defendant, the party. Usually that rule is invoked to the detriment of the party. And if you look at prong five, it doesn't say that the defendant personally has to show up at a meeting. It says the defendant provide truthful information. And furthermore, that it doesn't necessarily have to have value to the government. And I think that Judge Adams kept thinking that they're not talking about all these things that the government didn't know, about who the leadership was, how the trailer got to Cleveland, all these things. He's just assuming that these guys are holding back information, which is not true. Even the government was put on the spot in this case. I'm sure you can ask Mr. Duncan where he actually cross-examined him about, you know, what kind of office do you have that doesn't require in-person meetings? And he said, well, I trusted the representations of counsel. Furthermore... So I know your time is limited, but a bottom line question is, once the district judge requires these in-person meetings and these proffers and so forth, does your client end up pointing the finger at Mr. Coteluna and involving himself, your client himself, in inconsistencies? Okay, so there's two parts to that question. First part is that it wasn't that he was in any way informing, in a sense, on Mr. Coteluna. Mr. Coteluna, and I don't think it's disputed, brought my client in because he's a 65-year-old guy who has a long history of trucking. He has a CDL license in Mexico. He has made numerous trips across the border delivering goods to the U.S., and he knows trucks. And he was brought in, presumably, to accompany him to the location and look at the truck to see, you know, if there was, what was going on underneath. My client never even got underneath the truck. He didn't have any grease on him. And the second part of your question was the inconsistencies. But they really weren't inconsistencies. First of all, we shouldn't have had to go back and put somewhat of an illiterate man who had very little education, and without a Spanish interpreter in the room with the agent, ask questions. So he did fear that this, at some point before they went to the truck, that there was, something was not right here. Something was awry, that he thought that there was a drug situation in this particular matter. And then it was confirmed later on. So, you know, he, I think the judge was picking on any little inconsistency that he come up with to say the whole process was untruthful. Then you go into the allegation that my client must have brought in 19 kilos of marijuana. In 2010, he was stopped at the border. There was marijuana hidden in the load that he picked up from a company. They investigated it. They let him go. They did not arrest him. He proceeded into the U.S. and has done that numerous times since then. Judge Adams, on the other hand, saw some nefarious aspect to this, that it was somehow a prior criminal conduct that he used to suggest that my client knew more than he was allowing. And then he said, I said, well, there's no evidence of any crime there. And he said, well, you haven't disproven it. Well, I've never heard a federal judge say in my 44 years of practice that you have to prove, disprove anything. And then, of course, he talks about the medical examiner's office, about heroin overdoses and deaths. He talks about the price of cocaine on the street. He just goes on and on about these kinds of suppositions. Is it improper for a district judge to consider the drug problem, shall we say, in deciding how to sentence somebody? The district judge's theory here is that your clients may be little cogs, but they're little cogs in the end. They're in the giant wheel of huge distributions, and here are 90-plus kilos. It's not wrong to use that, Judge. But it's wrong to use it when looking at specific guideline applications. Because he could not comprehend that my client, who had such a minimal participation, was kept in the dark. That's how the cartel worked. He couldn't conceive that this man would have a very minor, minimal role in this process and wouldn't be told anything about what was going on. That's how the cartel works. They compartmentalize the process and use segmented approaches. And they use dupes to sometimes check on something to make sure that no one's looking or no one's following them. And he then uses his own belief system to decide that they were indispensable, that this whole operation could not have come together without these two guys who were really kind of being used. And so the idea of the drugs, the overdoses, is an important aspect of drug sentencing, but not in terms of the application of the guidelines. Which, by the way, everybody agreed to. Mr. Duncan, the Assistant U.S. Attorney, has confirmed in his sentencing manual that they didn't even know the nature and extent of the narcotics, that he lacked knowledge of the cargo, that his role was no more than transitory, that he was not even able to open the compartment because he didn't have the proper tools, that there was no... Your red light has been on. Right. So I just think that when you look at it all, there was an abuse of discretion. And if the court decides to reverse and remand, I would respectfully ask the court to assign a different judge. Thank you. Good morning. Duncan Brown for the United States of America. May I please have the court? Counsel, I see your office agreed with the proposed binding plea agreement, and yet you're supporting Judge Adams' sentence. On appeal here, how did you shift around like that to take this position in connection with the appeal? Thank you, Your Honor. The government would argue, and I would argue, that this is not a shifting, this is simply the government did agree to a C agreement, they did agree to a B agreement. However, this case is fundamentally about whether a court can exercise its discretion in sentencing, and how this court in this case did in fact properly exercise that discretion. Doesn't he have to give reasons? He did. And starting from the rejection of the C agreement on January 4th, he gave plenty of reasons and plenty of notice. What reasons did he give upon the initial rejection, other than I don't want to have my hands tied? Well, he said specifically, my hands are not going to be tied when I look at all the various factors I'm going to consider. But what else did he say other than that? That's generic. There's no reason specific to anything here. No, because he said he wanted to consider all of the factors. Does that mean that any district judge can have a policy that he doesn't like 11C1Cs, and he's going to reject them because he wants to look into the facts more? As a practical matter, yes. What case is there that supports that? There are no cases that say that there has to be a specific reason. A district judge can write 11C just sort of out of the criminal rules in his or her courtroom? A district court judge can decide that he wants or she wants to review all of the factors. Review the factors and then make a reasoned determination as to whether there's a problem with the 11C. We're talking about rejecting it up front on this record. You don't have any authority that supports the district judge's ability to do that, do you? No, but he did give the reason that he wanted to consider everything about the case. I guess I'm suggesting that's not much of a reason. But it is a reason. It's a blanket reason. It's not particular to the case. It would be one thing if he had some specific problem with this particular 11C1C. And the only other thing that I see that he said was, he said, we have, what, 90 plus kilos of cocaine. I have other relevant conduct that's going to be part and parcel of the case. I don't know what he's referring to there. Your Honor, the government would suggest that perhaps based on other comments he's made, he made at other times, that he had reviewed the complaint that had been filed in the case, where the defendant, Cotaluna's prior history was mentioned, and the sort of facts and circumstances of the underlying case were spelled out in support of the arrests of the defendants. He did make mention of those in subsequent hearings, and those may be the sort of general facts. The relevant conduct is that truck that was found at the border with marijuana in it. Is that the relevant conduct? In part, but also the relevant conduct of the truck with the 92 kilos being approached by the defendants at 5 a.m. in the morning, that they were observed underneath the truck. But he's not using the word relevant conduct in the sentencing guidelines way then, because that, I don't know what guideline that would pertain to. I think he's using it more broadly in the 1836-61 way, in which all facts can be considered by a sentencing judge at time of sentencing to fashion a sentence. That's what the government would argue based on his subsequent discussions, his subsequent actions with the sentencing. If the court of appeals believes that the district judge did not have authority to reject the C1C, could the court of appeals order a district judge to accept the C1C here? Your Honor, I have not found any case law. Either way. Any thoughts on the subject? Your Honor, I would argue that based on the facts of this case, and the extensive record that the judge made both in his, I want to say the June 14th opinion and order, and then also at the June 15th sentencing hearings, in addition to the May 18th, that that course of action would perhaps run afoul of the holding from United States versus, I always mispronounce the name, so I apologize, I want to make sure I get it right, Phineasy, where the, common spelling, Your Honor, P-H-I-N-A-Z-E-E, and it's cited in the government's brief, where it says the court of appeals must respect the role of the district court, and not substitute judgment of that for those of the courts on the front line. And the court did look to the specific facts of this case, and applied the facts, the government will concede, applied the facts, and gave weight and balance to the facts differently than the government did, certainly differently than the defense counsel did, but he looked at all of the facts and all of the conduct in this case, and he also looked at the larger policy issues. Your view as to whether the defendant himself has to provide the information, as opposed to his attorney could provide it on his behalf, under the rule? Under the rule, the court cited in its June 14th opinion and order, and relied on United States versus O'Dell, where he interpreted that, the defendant has basically an affirmative duty to provide that. In this case, I will... It was an affirmative act, and it's citing, O'Dell cited U.S. v. Wren, that required an affirmative act by the defendant, truthfully disclosing, there's no in-person requirement. It could be, and in this case, the government did, because as Mr. Surratt outlined, and I think Mr. Gilbert also outlined, we did speak extensively in person, over the phone, via email, probably with every type of communication, from right before Christmas through New Year's up until January 4th. We had meetings at the U.S. Attorney's Office, telephone conversations, meetings at the agencies involved. When you're saying these meetings, meetings with the defense lawyers, or meetings with the defendants? With defense counsel, and that's why, when we originally did an attorney proffer, which is not normal, but it's not barred or prohibited by our office, it was because it was in the context of those extensive meetings, because during those meetings we talked about not just pleas, but also the basis for pleas, the weight of evidence, the strengths of relevant arguments. So you agree then that the district court was wrong to say that it had to be an in-person meeting of the defendant himself with the government? Well, the district court said that on May 18th, and when we adjourned that hearing, we in fact then went back and had in-person meetings with the defendant. But the fact that you didn't have them originally means that you didn't think that they were necessary. Correct. So are you saying that you were wrong, or is it the district judge who's wrong? Well, the district court, I believe the record would show that on the 15th of June, the district court did not rely solely on the in-person or not in-person quality of those proffers, but the nature of the information, and taken in context as one part of a number of considerations about the defendant's presentation to the court that supported sort of a lack of consistency or a lack of truthfulness or transparency. So it would not be proper for the district court to rely solely on the fact that it was not in-person? Right, and I don't think it relied solely on that fact. I think that was one of several factors that it looked to. As you point out, there was an in-person meeting before the court imposed sentence, correct? Correct. And I mean, unless I'm really starting to forget everything as I get older, I believe I wrote an opinion which said that the sentencing hearing, as that term is used under the criminal rules, is the hearing at which the court pronounces sentence, which would mean here that they did in fact provide information firsthand before the sentencing hearing. Correct, which is why, again, Your Honor, I think the court did not rely solely on a timing issue. Well, he shouldn't have relied upon it at all, I guess. I mean, this whole thing is an invalid basis, it would appear, for the court to have rejected the 11C, this whole defendant in-person business. Well, I think the 11C was a separate rejection. The in-person proffer was just for safety valve. Oh, I'm sorry. I'm sorry. All right. Well, I think it's a distinction that becomes relevant because in the rejection of safety valve, there were other factors that the court considered, which, again, if there was one factor to rely upon... So my understanding, and correct me if I'm wrong, is that the district judge primarily relied on inconsistencies within Navarro-Gaetan's testimony, and Navarro-Gaetan pointing a finger at Cota Luna for being an organizer or leader. Yes, but also with Navarro-Gaetan, he looked at... And I'm sorry to physically shift like that, but I'm going between documents here. He also looked at Navarro-Gaetan's role, and the court made the finding, or he held that he did not believe Navarro-Gaetan was a minimal participant, in part because of, as Mr. Gilbert outlined his background as a trucker, the court looked at that and applied those facts, again, differently than the government or other party, and he said, well, because he was a trucker, because he did not physically look like a normal drug courier, he was older, he had multiple border crossings, but he had a specialized knowledge of trucking or an ability to cross the border. He had knowledge of how trucks work and are put together. Within the context of the needs of a cartel, he becomes more than just a minimal participant. He is a very valuable type of courier. Did the judge have some information that this fellow was a regular courier? You're making it sound like the man was habitually involved in this kind of criminal enterprise. Did the judge have some information to that extent? No, Your Honor, and I apologize if I was making him sound like he was a regular courier. There was no information that he was a regular courier, because the government agreed with defense counsel that he was not a regular courier. Correct, and I'm not changing the government's position. What the court said was not that he was a regular courier, but he had the type of knowledge or expertise that for carrying a 92-kilo load of cocaine that was apparently 92 or 96 percent pure, they would need somebody with a more specialized knowledge. He was not saying that Navarro Gaitan was crossing the border every day. A truck is not an aggravating factor for the imposition of a criminal sentence, is it? Well, no, but in the application of safety valve to this case, because it involved a courier-based trucking company, or a truck carrying these drugs, because it required the ability to get into parts of a truck, and because Mr. Cotaluna had testified that he got them because of his knowledge of trucks, the district court looked at that as a reason to find that he was not a minimal participant. I'm sorry that I forget this. If you are not a minimal participant, are you not allowed to get the safety valve? Correct. I'm sorry if I'm making you repeat yourself. Is it your contention today that they were minimal participants? My contention today is the government stands by and supports the plea agreement that it entered into with the parties. Did that plea agreement then give them the safety valve, in effect? Yes. Correct, Your Honor. The safety valve then invoked a series of other departures, sort of a cascading effect. But the government's position here is, yes, we stand by our plea agreement. We absolutely do. It was validly entered. The government, however, is arguing that the district court applied the facts of the case as presented by both parties, both in writing and orally at the May 18th and the June 15th hearings. It applied the facts and gave the facts a different weight or a different balance. I thought you just disagreed with the judge's contention that being a trucker could result in a penalty. Well, the government argued that in this case, because he was cabined off, that would suggest minimal participant. The court, and it has the right to do this under Anderson v. City of Bessemer, Supreme Court case 470 U.S. 564 at 574, where there are two permissible views of evidence, the fact finder's choice cannot be clearly erroneous. In this case, the government is in the position that we stand by our plea agreement, and we recognize that there is a greater great disparity in sentences. However, the district court's procedure was reasonable in applying the facts to the case and the guidelines and the use of its discretion in fashioning the sentence it did. The government will not shy away from the fact that the difference between 33 months or 36 months and 10 years is extremely significant. However, the job here and the review here is not do we disagree, because we certainly disagree, but was there a procedural error or substantive error in reaching that sentence that requires a reversal. And the government here would argue that procedurally and substantively, the process followed by the court and the application of that process applied by the court was reasonable under Sixth Circuit law. If there are no further questions, I will concede the balance of my time, which is about three and a half minutes, but I'm happy to take any other questions. I just want to just confirm, he had two reasons, one, not a minimal participant. What was the second reason again? Inconsistencies in his statements, that he was not being truthful. I mean, do you have a position as to whether the statements were in fact inconsistent? I think any inconsistencies, and I think we argued this at time of sentencing, were due to the defendant's fear of reprisals in Mexico. I think the government's position, and certainly the defendant's position when presenting facts to us, which we gave credit to, was that Mr. Navarro-Gayton and also Mr. Cotaluna, did have a fear for their family's safety, for their own safety. So, if I understand you correctly, you're saying the government is not asserting there were any inconsistencies, but to the extent there were, or if there were, they had a good excuse for them. Is that fair? That would be fair. And the inconsistencies, though, pertain to Navarro-Gayton as opposed to Cotaluna. Correct. So what's the reason, then, for denying Cotaluna the safety valve? Well, the judge said that Cotaluna was not a minimal participant because he recruited Navarro-Gayton. So Navarro-Gayton is believable, according to the district judge, when he points to Cotaluna? Well, correct. Because nobody else pointed to Cotaluna, but not believable in other ways. Overall, correct. That there were internal inconsistencies that he could not look beyond. Thank you. Any further questions? Just real quick, because time flies. I really wonder how he was going to answer your question, because even at the conclusion of the case, I asked him that specific question. It's on the record. I want it to come out of your mouth. Are you still, after the sentence, I asked Mr. Brown, wait a second, are you backing up out of the agreement? Or as we see it here today, are you still accepting the agreement? He said, no, I still buy by the agreement. So that leads me to believe that the agent, the U.S. Attorney's Office, everybody there agreed that that's what should have been done, that what the court did was wrong. But yet he stands here, he's dancing around the table, but he's trying to defend the judge. I just think that shouldn't be proper. He's talking about some sort of institutional reasons that perhaps the court's actions, in their view, were justified, and that it's more about a larger precedent, perhaps. I sympathize with that. I do want to understand, some of you talked about the inconsistencies, and that the court found Navarro-Gaetan not credible at all. But yet, as the court indicated, that's the only thing he used to find Mike Klein to be a leader, or whatever else he said. And keep in mind, Mike Klein addressed that issue, and he denied it. The court had an opportunity to speak to him about that. So the only facts before the court, as far as Mike Klein is concerned, is a denial by Mike Klein that, in fact, that was true. Contrary, when Navarro-Gaetan spoke to the court, addressed the court, the court had an opportunity to ask him that. Because I brought it up beforehand that, hey, wait a second, I spoke to Navarro-Gaetan through somebody else, and he denied making that statement. That's all part of the record. So the court had an opportunity to say, hey, wait a second, is this letter that has your name, is this something you actually said or not? He didn't do that, because I think he was afraid of the answer. The answer would have been, no, he didn't do that. So I'm led to believe that since the United States of America, through the U.S. Attorney's Office, the agents, the agents themselves that conducted the entire investigation, told the court that Mike Klein was not a leader. There was not an organizer. My client tells the court that he's not, but yet somehow he, someone that he's declared under record, he's not believable, he's going to take one little sentence out of that argument and find it to be a leader. And keep in mind, it didn't come out of his mouth. This is something that counsel argue, that we dispute it. I just think that the judge's actions here were a violation of fundamental fairness, equality, and justice. And I had a very difficult time to explain to a family from Mexico, with no prior criminal justice experience, that we had negotiated a contract with the United States of America. And somehow this judge, I couldn't tell him why he did that, he did not follow that contract. And it's very difficult to explain to a mom and dad that their son, thinking that he was going to go away for three years, is now doing ten years, for no reason whatsoever. But I think it's illegal. I'll be very quick. Two minutes is not enough time. But just in response to Mr. Duncan, he seems to suggest that the judge looked at facts in the, through the process from the first hearing to the second hearing. He didn't look at facts. He relied on his own belief system in order to challenge and attack any reasonable argument that the government was making. That the government and the defense had agreed to. Secondly, the case law on this safety valve regarding prong five, all those cases involved a dispute between the government and the defendant regarding the application of the safety valve. In other words, the government said they didn't come forward and were not truthful. The defendant said they were truthful, and then it was up to the court to be the arbiter of whether to, which side to take and which position is more reasonable. That's not the case here. We had, in a sense, a contract with the government regarding the safety valve. It was a good faith effort to present all the information that the government needed. We knew it. So I just feel that in the end, if the court looks at the transcripts and sees the reasoning of the court, it does lead to the conclusion that he was using facts outside the record. And his own opinion and his own belief system and assumptions. So we feel that also that at the May 18th hearing, when we were shocked when the judge said, I'm not going to give the safety valve because you didn't personally meet with the government. And the government stood up and said, that's not the way we do it. We had every reason to rely on the government's representation that they were satisfied. And there should never have been, we should never have been put in a position, we were damned if we didn't, damned if we didn't. If we didn't go to another meeting, he then would say, well, you didn't have a face-to-face meeting. And if we just didn't do, if we just stayed with our position that there was no need for a face-to-face meeting, then he would have taken that into consideration in final sentencing. Thank you.